UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN A. JONES, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>-against-<br><br>HALSTEAD MANAGEMENT COMPANY, LLC, BROWN HARRIS STEVENS LLC GROUP, and BROWN HARRIS STEVENS, LLC,<br><br>    Defendants<br><br>and<br><br>HALSTEAD MANAGEMENT COMPANY, LLC, and BROWN HARRIS STEVENS RESIDENTIAL MANAGEMENT, LLC,<br><br>    Third-Party Plaintiffs,<br><br>-against-<br><br>STERLING INFOSYSTEMS, INC. d/b/a STERLINGBACKCHECK<br><br>    Third-Party Defendant. | No. 14-cv-03125 (VEC)<br><br>**DEFENDANTS HALSTEAD MANAGEMENT COMPANY, LLC AND BROWN HARRIS STEVENS RESIDENTIAL MANAGEMENT, LLC'S THIRD PARTY COMPLAINT AGAINST <u>STERLING INFOSYSTEMS, INC.</u>** |

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, Defendants and Third-Party Plaintiffs Halstead Management Company, LLC ("Halstead") and Brown Harris Stevens Residential Management, LLC ("BHS"), erroneously sued herein as Brown Harris Stevens LLC Group and Brown Harris Stevens, LLC (Halstead and BHS collectively, "Third-Party Plaintiffs"), by and through their counsel of record, Venable LLP, allege for their Third-Party Complaint against Sterling Infosystems, Inc. d/b/a SterlingBackcheck ("Sterling" or "Third-Party Defendant") as follows:

## NATURE OF THE ACTION

1.     Plaintiff Kevin A. Jones ("Jones" or "Plaintiff") has filed a purported class action complaint ("Complaint") against Third-Party Plaintiffs Halstead and BHS for alleged violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3) ("FCRA").  Plaintiff Jones alleges he was denied employment due to an inaccurate background report provided by Sterling to Halstead.  Plaintiff further alleges, on behalf of himself and members of the purported class (collectively, "Plaintiffs"), that Halstead and BHS violated the FCRA by using consumer reports as a basis to make adverse employment actions, without first providing Plaintiff and members of the purported class the following: (1) notice, (2) a copy of the consumer report, and (3) a written description of rights under the FCRA (collectively, "Pre-Adverse Action Notice").  Plaintiff alleges that Plaintiff and the class members were left without sufficient notice to dispute the consumer report prior to the adverse action.

2.     Halstead and BHS engaged Sterling to provide certain services, including assisting compliance with the FCRA and the issuance of Pre-Adverse Action Notices.  Halstead and BHS deny the claims in the Complaint.  In addition, Halstead and BHS assert claims against Sterling for breach of contract, negligence, negligent misrepresentation, and, to the extent Halstead and BHS are found to be liable to Jones or Plaintiffs, for common law indemnification and contribution.

## PARTIES

3.     Third-Party Plaintiff Halstead is a real estate management company licensed to do business in the State of New York and has its principal place of business at 770 Lexington Avenue, New York, New York 10065.

4. Third-Party Plaintiff BHS is a real estate management company licensed to do business in the State of New York and has its principal place of business at 770 Lexington Avenue, New York, New York 10065.

5. Upon information and belief, Third-Party Defendant Sterling is a background-checking vendor licensed to do business in the State of New York and has its principal place of business at 1 State Street Plaza, 24th Floor, New York, New York 10004.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a) because this Court has original jurisdiction over this action, and Third-Party Plaintiffs Halstead and BHS's claims are so related to claims in the action initiated by Plaintiff Jones that they form part of the same case or controversy under Article III of the United States Constitution.

7. This Court has personal jurisdiction over Third-Party Defendant Sterling because Sterling has continuous, systematic, and substantial contacts with the State of New York, including having a principal place of business in New York.

8. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Third-Party Plaintiffs' claims occurred in this District, and because Sterling is subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

*Halstead and BHS's Engagement of Sterling for Employment Services*

9. For the time period relevant to the events alleged in the Complaint, Halstead and BHS, through their parent Terra Holdings, LLC ("Terra"), engaged Sterling as a vendor to provide various services for Halstead and BHS with respect to applicants for employment at client properties managed by Halstead and BHS ("Applicants").

10. After Applicants were referred to BHS or Halstead by their client buildings, the Human Resources Division of Terra (the "HR Department") requested Sterling to conduct credit checks, criminal background checks, and drug tests on Applicants and to provide the results to Terra.

11. The HR Department reviewed and relied on the information provided by Sterling. In some cases, the HR Department requested more information from Sterling and/or the Applicant, on the basis of Sterling's reports.

12. In rare instances, the HR Department determined that the information provided by Sterling about an Applicant necessitated sending Pre-Adverse Action Notice to the Applicant, and instructed Sterling to do so.

13. Sterling billed separately for each Pre-Adverse Action Notice it sent to Applicants, in addition to charging for drug tests and consumer reports.

14. BHS and Halstead relied on Sterling to send Pre-Adverse Action Notice to Applicants, in compliance with the FCRA.

15. In a significant number of instances during the period relevant to the allegations in the Complaint, an Applicant was cleared for employment after receiving a Pre-Adverse Action Notice and an opportunity to dispute or respond to the information therein.

*Employment Review of Mr. Jones*

16. Plaintiff Jones applied for employment at a property managed by Halstead, 45 East 62nd Street Corp (the "Building"), on July 12, 2012.  His application package was sent to the HR Department, which then requested Sterling to conduct the standard credit and criminal record checks.

17.     On or around July 13, 2012, Sterling sent the HR Department a background check report for Jones, which listed criminal offenses, including attempted petit larceny, attempted forgery, and driving offenses between 2007 and 2010.

18.     Relying on the information provided by Sterling, the HR Department directed Sterling on July 16, 2012 to send the Pre-Adverse Action Notice in conformity with the FCRA to Jones.

19.     On July 16, 2012, the HR Department also informed an executive of the Building of the complete Sterling report and the fact that it included criminal charges.  The notice said a pre-adverse action letter would be sent, and, "we will advise you of his response."  The notice included the Sterling telephone number "to expedite this process," anticipating that the Applicant might dispute the charges.

20.     In an email dated July 16, 2012, time-stamped 5:31 p.m., Sterling confirmed that it would send a Pre-Adverse Action Notice to Jones as requested.

21.     In an email dated July 16, 2012, time-stamped 6:01 p.m., Sterling reported to the HR Department that Jones had contacted Sterling to "dispute the criminal results."  In the email, Sterling stated, "please be assured we will reach out to the courthouse and investigate further," and that the HR Department would receive a revised report if it were updated.

22.     The Building was responsible for making the ultimate hiring decision on Jones. The HR Department, Halstead, and the Building took no adverse action with respect to Jones while awaiting the results of Sterling's investigation.  On July 17, 2012, the Halstead Building account executive said "please let me know as soon as this is resolved as the [Building] Board is anxious to hire him," clearly indicating no decision had yet been made.  Again on July 19, 2012, the account executive asked, "can you tell me the current status of this?" and was told "nothing

as of yet." On July 24, the account executive said, "I don't want to be a pest but the Board is pressing me for an answer."

23. On July 24, 2012, in an email time-stamped 12:30 p.m., the HR Department contacted Sterling to ask for an update on the investigation, stating, "It is very time sensitive as one of our residential buildings needs to hire him ASAP." On July 24, 2012, Sterling responded by email that "[t]he dispute is in progress," and would be expedited.

24. On July 24, 2012, in an email time-stamped 3:52 p.m., Sterling informed the HR Department that "[a]fter extensive investigation, the criminal results were validated from the courthouse and remain unchanged."

25. The HR Department forwarded this information from Sterling to individuals involved in hiring decisions at the property 45 East 62nd Street Corp. on July 24, 2012.

26. In an email dated August 13, 2012, Sterling informed the HR Department that Jones had contacted Sterling to dispute the results of the investigation. Sterling again assured the HR Department that it would investigate further.

27. In an email dated October 19, 2012, Sterling informed the HR Department that "[a]fter extensive investigation," the results "remain unchanged" and that the disputed case "has been closed and is not in the applicant's favor."

<b><u>CAUSES OF ACTION</u></b>

<b>COUNT I</b>

<b>Breach of Contract</b>

28. Halstead and BHS repeat and reallege the allegations contained in paragraphs 1 through 27 above.

29. For the time period relevant to the events alleged in the Complaint, Halstead and BHS engaged Sterling to provide accurate and complete credit reports, criminal background checks, drug tests, and to issue pre-adverse action and adverse action letters.

30. Sterling billed for these services by sending Halstead and BHS invoices, itemized by service.

31. Halstead and BHS, through their client buildings, paid the invoices sent by Sterling for its services.

32. BHS and Halstead engaged Sterling to perform background checks and issue notices required by the FCRA. If these duties were performed improperly, as is alleged in the Complaint, it was by virtue of Sterling's breach of its obligations by failing to perform contracted-for services in a timely, accurate, skillful, and/or workmanlike manner.

33. If Sterling furnished an inaccurate background check for Jones and continued to provide inaccurate information in investigating Jones, Sterling breached its obligations by failing to perform contracted-for services in a timely, accurate, skillful, and/or workmanlike manner.

34. Halstead and BHS have been damaged in an amount equal to any legal fees, costs, or expenses they have incurred in defending the claims in the Complaint and will continue to be damaged in an amount equal to any legal fees, costs, or expenses incurred in continuing to defend against the Complaint, and in an amount equal to any monies Halstead and BHS pay to satisfy any settlements of, or judgments in, this action.

## COUNT II

### Negligence

35. Halstead and BHS repeat and reallege the allegations contained in paragraphs 1 through 34 above.

36. Halstead and BHS deny any and all liability to Jones and/or Plaintiffs.

37. Sterling owed a duty to Halstead and BHS to perform its invoiced duties, including providing accurate reports and FCRA compliance duties, with reasonable care and diligence.

38. BHS and Halstead engaged Sterling to perform background checks and issue notices required by the FCRA. If these duties were performed improperly, as is alleged in the Complaint, it was by virtue of Sterling's failure to meet the standard of care that would be exercised by a reasonably prudent person in similar circumstances.

39. If Sterling furnished an inaccurate background check for Jones and continued to provide inaccurate information in investigating Jones, Sterling's actions fell beneath the standard of care that would be exercised by a reasonably prudent person in similar circumstances.

40. Halstead and BHS have been damaged in an amount equal to any legal fees, costs, or expenses they have incurred in defending the claims in the Complaint and will continue to be damaged in an amount equal to any legal fees, costs, or expenses incurred in continuing to defend the Complaint, and in an amount equal to any monies Halstead and BHS pay to satisfy any settlements of, or judgments in, this action.

## COUNT III

### Negligent Misrepresentation

41. Halstead and BHS repeat and reallege the allegations contained in paragraphs 1 through 40 above.

42. Halstead and BHS deny any and all liability to Jones and/or Plaintiffs.

43. Halstead and BHS are in privity of contract and/or in a relationship so close as to approach that of privity with Sterling.

44. Halstead and BHS had a special relationship of trust and confidence with Sterling.

45. Sterling was aware that its representations regarding the Pre-Adverse Action Notice in connection with Jones's employment application were to be used for a particular purpose in the furtherance of which Halstead and BHS intended to rely.

46. Sterling knew Halstead and BHS would and did rely on Sterling's representations regarding sending Pre-Adverse Action Notice in connection with employment applications.

47. Sterling knew Halstead and BHS would and did rely on Sterling's representations regarding the accuracy of Jones's background information

48. If Halstead and BHS are liable to Jones and/or Plaintiffs, then Sterling negligently misrepresented to Halstead and BHS that Sterling had sent Pre-Adverse Action Notice in compliance with the FCRA.

49. If Sterling furnished an inaccurate background check for Jones and continued to provide inaccurate information in investigating Jones, Sterling negligently misrepresented to Halstead and BHS that Sterling had provided accurate information regarding Jones and had investigated Jones in an accurate, skillful, and/or workmanlike manner.

50. Halstead and BHS have been damaged in an amount equal to any legal fees, costs, or expenses they have incurred in defending the Complaint and will continue to be damaged in an amount equal to any legal fees, costs, or expenses incurred in continuing to defend the Complaint, and in an amount equal to any monies Halstead and BHS pay to satisfy any settlements of, or judgments in, this action.

**COUNT IV**

**Common Law Indemnification**

51. Halstead and BHS repeat and reallege the allegations contained in paragraphs 1 through 50 above.

52. Halstead and BHS deny any and all liability to Jones and/or Plaintiffs.

53. If Halstead and BHS are liable to Jones and/or Plaintiffs, Halstead and BHS are liable without any negligence or actual supervision on their part of the actions that caused injury to Jones and/or Plaintiffs.

54. Sterling was solely responsible for sending Jones and/or Plaintiffs the Pre-Adverse Action Notice required by the FCRA.

55. If Halstead and BHS are liable to Jones and/or Plaintiffs, it is Sterling that was negligent and/or exercised actual supervision or control over the actions that caused injury to Jones and/or Plaintiffs, including any failure or omission in sending Pre-Adverse Action Notice.

56. Jones and/or Plaintiffs' injuries, if any, are attributable solely to Sterling's negligent performance or nonperformance of acts solely within the province of Sterling, and/or to Sterling's negligent misrepresentations regarding such acts.

57. Failure by Sterling to indemnify Halstead and BHS for sums payable to Jones and/or Plaintiffs would result in unjust enrichment of Sterling at Halstead and BHS's expense.

58. But for the actions of Sterling, Jones and/or Plaintiffs would have no claim against Halstead and BHS and would not have suffered any of his alleged damages claimed in his lawsuit.

59. Sterling is obligated to indemnify Halstead and BHS for any sums that Halstead and BHS may be compelled to pay as a result of any damages, judgments, settlements, or other

awards recovered, or any liability costs, legal fees and expenses incurred in connection with Jones and/or Plaintiffs' claims.

60. Halstead and BHS have been damaged in an amount equal to any legal fees, costs, or expenses they have incurred in defending the Complaint and will continue to be damaged in an amount equal to any legal fees, costs, or expenses incurred in continuing to defend the Complaint, and in an amount equal to any monies Halstead and BHS pay to satisfy any settlements of, or judgments in, this action.

61. In the event of and to the extent that Halstead and BHS are determined to be liable in this action, Halstead and BHS are entitled to indemnification from Sterling for any costs, expenses, damages, or other relief incurred by or awarded against Halstead and BHS.

## COUNT V

### Common Law Contribution

62. Halstead and BHS repeat and reallege the allegations contained in paragraphs 1 through 61 above.

63. Halstead and BHS deny any and all liability to Jones and/or Plaintiffs.

64. If Halstead and BHS are liable to Jones and/or Plaintiffs, Sterling is liable in whole or in part due to its own negligence in connection with sending the Pre-Adverse Action Notice and investigating and providing background information on Applicants.

65. If Halstead and BHS are liable to Jones and/or Plaintiffs, Sterling negligently breached its duty of care owed to Halstead and BHS.

66. If Halstead and BHS are liable to Jones and/or Plaintiffs, Sterling negligently misrepresented its performance of its duties to Halstead and BHS.

67. Sterling owed a duty to Jones and/or Plaintiffs to perform FCRA compliance duties including sending Pre-Adverse Action Notice and providing accurate background information on Applicants with reasonable care and diligence.

68. If Halstead and BHS are liable to Jones and/or Plaintiffs, Sterling negligently breached its duty of care owed to Jones and/or Plaintiffs.

69. Sterling is liable to Halstead and BHS for contribution for any legal fees, costs, expenses, damages, or other relief incurred or awarded against Halstead and BHS in favor of Jones and/or Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Halstead and BHS respectfully request that this Court enter judgment in their favor and against Sterling as follows:

(a) Sterling is liable for indemnification or contribution to Halstead and BHS for some or all of the damages awarded to Jones and/or Plaintiffs against Halstead and BHS;

(b) Sterling must account and pay for damages in an amount equal to any legal fees, costs, or expenses Halstead and BHS incur in the prosecution of this action and in defending the Complaint, and in an amount equal to any monies Halstead and BHS pay to satisfy any settlements or judgments in connection with the Complaint; and

(c) Halstead and BHS are granted such other and further relief as the Court deems just and proper.

Dated: June 27, 2014
      New York, New York

VENABLE LLP

_____/s/_____
Edmund M. O'Toole
Sarah S. Park
Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, New York  10020
Tel: (212) 307-5500
Fax: (212) 307-5598
emotoole@Venable.com
spark@Venable.com
*Attorneys for Defendants and Third-Party Plaintiffs Halstead Management Company, LLC and Brown Harris Stevens Residential Management, LLC*